IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DETRA HOWARD MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE NO. |
| v. ) | 1:10-CV-03621-HLM-WEJ |
| ) | |
| GEORGIA POWER COMPANY, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

COMES NOW Plaintiff Detra Howard Mitchell and, pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Northern District of Georgia, submits the following responses to Defendant's Statement of Undisputed Material Facts.

1.

Plaintiff worked as a Customer Service Representative in Georgia Power's Macon Office from 2001 until 2009.  (Pl. Dep. at 39-40.)

Plaintiff's Response:  Admits.

2.

During a meeting on September 12, 2008 with Debra Harrison, Donna Ellis and Jan Edwards, Plaintiff began crying, said she was depressed and asked for help. (Pl. Dep. at 87-89, 98-102, 105-110, Ex. 13; Harrison Dep. Vol. II at 25, 42-

1

45; Ellis Dep. at 73-75, Ex. 4; Ellis Decl. ¶ 15, Exs. C, D; Harrison Decl. ¶ 13; Edwards Decl. ¶ 8.)

Plaintiff's Response: Denies and objects. This statement is not supported by the evidence cited by Defendant and mischaracterizes the evidence. Plaintiff admitted that after 45 minutes of interrogation, she became depressed due to the belligerent misconduct of the management employees at the meeting who ridiculed her faith, pounded on the table, and raised their voices at her. Plaintiff admits that she cried but denies asking for help. (Plaintiff's Dep. at pp. 89, 98, 105, 107-110).

3.

On September 12, 2008, James Miller made the decision that Plaintiff should be sent for a fitness-for-duty evaluation based on information provided by Ms. Ellis that Plaintiff began crying, said she was depressed and asked for help during a meeting. (Miller Decl. ¶ 3; Ellis Dep. at 175; Ellis Decl. ¶ 15.)

Plaintiff's Response: Admits. Plaintiff objects to the materiality of the statement due to the fact that Miller did not do an independent investigation and based his decision on what Ellis told him, and that information given to Miller by Ellis is disputed. (See Plaintiff's response to Statement 2).

4.

Mr. Miller did not know Plaintiff's race when he made the decision that she should undergo a fitness-for-duty evaluation. (Miller Decl. ¶ 4.)

Plaintiff's Response: Admits. Plaintiff objects to the materiality of the statement due to the fact that Miller did not do an independent investigation and based his

decision on what Ellis told him, and that information is disputed. Ellis obviously knew her race because she attended in the meeting. ( See Plaintiff's response to Statement 2).

5.

Mr. Miller did not think Plaintiff was disabled when he made the decision that she should undergo a fitness-for-duty evaluation. (Miller Decl. ¶ 5.) Plaintiff's Response: Denies. Defendant's actions reveal Defendant's real motives. Plaintiff was taken immediately for a drug and alcohol test, placed unpaid administrative leave, told that she must go for a psychological fitness for duty evaluation, was not allowed to return to work even when she provided medical documentation that she was fit for duty, was told that she would have to take any prescription prescribed by a medical provider and if she did not she could be terminated. (Ellis Dep. at p. 84; Plaintiff's Defendant's Ex. 15, 16 and 38 to Plaintiff's Dep.; Plaintiff's Dep. at pp. 120-121, 126-129; 219). Plaintiff was only returned to work when she hired an attorney who threatened Defendant with the filing of an EEOC charge of discrimination. (Defendant's Exhibits 21 and 22).

6.

Plaintiff attended a fitness-for-duty evaluation with Dr. Christopher J. Tillitski, a licensed psychologist, on September 23, 2008 and October 16, 2008. (Pl. Dep. at 119, 137-138; Tillitski Decl. ¶¶ 4, 5; Pickard Decl. ¶¶ 8, 11; Miller Decl. ¶¶ 8, 10.)

Plaintiff's Response:  Admits.

7.

Dr. Tillitski informed Georgia Power that Plaintiff was not fit for duty. (Pickard Decl. ¶ 11; Tillitski Decl. ¶ 6; Miller Decl. ¶ 10; Pl. Dep. at 138.)

Plaintiff's Response:  Denies.  Plaintiff objects to the misrepresentation of the evidence.  Tillitski stated in his report that Plaintiff was unable to come back to unrestricted full-time work and suggested that she be allowed to return on a part-time basis and return to work on a full-time unrestricted basis in a matter of week.  (Defendant's Exhibit 40 to Plaintiff's Dep).   Tillitski stated in his report and his declaration that Plaintiff was not a danger to herself or others.  (Id.).  Plaintiff was never told of the options suggested by Tillitski that he deemed would allow her to come back to work.  (Defendant's Exhibit 20 to Plaintiff's Dep.).

8.

Dr. Tillitski's reports about Plaintiff and the report from a psychologist hired by Plaintiff were not circulated to any member of Plaintiff's management team (Debra Harrison, Mamie Mobley or Jan Edwards) or anyone at Georgia Power who did not have a need to know.  (Pickard Decl. ¶¶ 1, 9, 12-15; Miller Decl. ¶¶ 9, 10, 12, 13; Richerson Decl.¶¶ 9, 10; Ellis Decl. ¶ 9; Ellis Dep. at 86; Harrison Decl. ¶ 20; Edwards Decl. ¶ 14; *see also* Pl. Dep. at 130-132, 138.)

Plaintiff's Response:  Denies. Harrison quoted Tillitski's report in her October 30th letter to Plaintiff.  (Defendant's Ex. 20 to Plaintiff's Dep.)

9.

No medical information about Plaintiff was ever given to Debra Harrison, Mamie Mobley, Jan Edwards or Donna Ellis during Plaintiff's employment. (Harrison Decl. ¶ 20; Mobley Decl. ¶ 11; Edwards Decl. ¶ 14; Ellis Decl. ¶ 9; Pickard Decl. ¶¶ 9, 12-15; Miller Decl. ¶ 12; Richerson Decl. ¶ 9.)

Plaintiff's Response:  Denies.  Harrison received information in the medical report because she quoted it in her October 30th letter to Plaintiff when she informed Plaintiff that Tillitski had deemed her unfit for duty.  Harrison stated "Tillistksi recommends mental health counseling, a thorough medical evaluation, and possibly psychiatric review if your symptoms of emotional distress do not subside."  This is a direct quoted from Tillitski's medical evaluation.  (Defendant's Exhibit 20 to Plaintiff's Deposition to be compared to Defendant's Exhibit 40, p. 10).

10.

On October 10, 2008, with the approval of her attorney, Plaintiff signed a HIPAA Authorization for the Use and Disclosure of Health Information, which she provided to Georgia Power.  (Pl. Dep. at 134-135, Ex. 19.)

Plaintiff's Response:  Admits.

11.

Georgia Power's Medical Director told Georgia Power he was not opposed to allowing Plaintiff to return to work after he reviewed the report of Dr. Tillitski and the report of Plaintiff's psychologist. (Richerson Decl. ¶ 5; Pl. Dep. at 150-151, Ex. 22; Tillitski Decl. ¶ 7.)

Plaintiff's Response:  Admits.  But this also came after Plaintiff's attorney on December 8th threatened to file an EEOC charge.  (Defendant's Exhibit 21 and 22 to Plaintiff's Dep.).  Defendant had Tillitski's report since October 16 and had Plaintiff's medical provider's resort since October 21, 2008.  (Defendant's Exhibit 13 and 40 to Plaintiff's Dep.)  Prior to the threat of a charge of discrimination, neither the Medical Director or anyone else was willing to allow Plaintiff to come back to work in spite of both medical reports stating the Plaintiff was not a threat to herself or others.  (Id.)

12.

Plaintiff returned to work on January 2, 2009.  (Pl. Dep. at 152.)

Plaintiff's Response:  Admits.

13.

As a Customer Service Representative, Plaintiff was required to follow Georgia Power's Customer Service Standard 10.2 and Georgia Power's Internal Cash Security Statement. (Pl. Dep. at 274-276, Exs. 45, 46; Harrison Decl. ¶¶ 24, 25, Exs. F, G; Mobley Dep. at 143.)

Plaintiff's Response:  Admits.

14.

At the end of each workday, a Customer Service Representative is required to balance the cash, checks and money orders she received that day against the amount that the computer system shows she credited to the customers' accounts – if these two amounts match, the Customer Service Representative is considered to be "in

balance" and if these two amounts do not match, the Customer Service Representative is "out of balance." (Mobley Decl. ¶ 5.)

Plaintiff's Response: Admits.

15.

If the Customer Service Representative is "out of balance" and the money she has does not match what the computer system says she should have, she must report this fact to her supervisor prior to closing out of the computer system. (Mobley Decl. ¶ 5.)

Plaintiff's Response: Admits.

16.

Under no circumstances is a Customer Service Representative who is out of balance permitted to "force balance" by adjusting the amount of cash in her cash drawer or bank deposit or by making an adjustment to the cash reported in the system to make the figures match. (Mobley ¶ 5; Harrison Decl. ¶¶ 24, 25, Exs. F, G; Pl. Dep. at 274-276, Exs. 45, 46.)

Plaintiff's Response: Denies. The policy states that forced balancing is when any "invalid/artificial adjustment to the Cash or a Customer's Credit to make a cash report balance. (Defendant's Exhibit 46 to Plaintiff's Dep.; see also Plaintiff's Decl. at ¶ 9., Mobley Dep. p. 31; Cole Decl. at ¶ 14).   Prior to Plaintiff's termination "forced balancing" has always been interpreted to mean that a customer service representative cannot put money from an outside source including his or her own money or remove money from the cash fund in order to make it balance. ( Id.)

17.

If a Customer Service Representative is out of balance at the end of the day, but closes out of the computer system showing that she is in balance, the Customer Service Representative has force balanced. (Mobley Decl. ¶ 5; Mobley Dep. at 18-20; Palmore Decl. ¶ 7; Harrison Dep. Vol. II at 4-5.)

Plaintiff's Response: Denies. The policy states that forced balancing is when any "invalid/artificial adjustment to the Cash or a Customer's Credit to make a cash report balance. (Defendant's Exhibit 46 to Plaintiff's Dep.; see also Plaintiff's Decl. at ¶ 9., Mobley Dep. p. 31; Cole Decl. at ¶ 14). Prior to Plaintiff's termination "forced balancing" has always been interpreted to mean that a customer service representative cannot put money from an outside source including his or her own money or remove money from the cash fund in order to make it balance. ( Id.)

18.

Force balancing is strictly prohibited by Georgia Power's policies. (Harrison Decl. ¶¶ 24, 25, Exs. F, G; Mobley Decl. ¶ 6; Pl. Dep. at 274-276, Exs. 45, 46.)

Plaintiff's Response: Admits.

19.

When Plaintiff closed out her drawer at the end of the day on May 5, 2009, Georgia Power's computer system showed that Plaintiff had entered into the system that she had collected $2,664.51 in cash from customers paying their bills.

However, when Plaintiff counted the money she had actually collected, she discovered that she had $2,674.51 in cash. Therefore, Plaintiff was out of balance at the end of the day on May 5, 2009. (Pl. Dep. at 153-158; Edwards Decl. ¶ 9, Ex. A.)

Plaintiff's Response:  Denies.  Plaintiff believed that she was in balance at the time she completed her work at the end of the day, and did not find out she was out of balance until she was notified by Mobley.  (Plaintiff's Decl. at ¶ 14).

20.

On May 5, 2009, Plaintiff entered into the computer system and on her bank deposit slip that she was depositing $2,664.51 to the bank and indicated on the system that she was "in balance." (Pl. Dep. at 158-161; Edwards Decl. ¶ 9, Ex. B.)

Plaintiff's Response:  Admits. . Plaintiff believed that she was in balance at the time she completed her work at the end of the day, and did not find out she was out of balance until she was notified by Mobley.  (Plaintiff's Decl. at ¶ 14).

21.

On May 13, 2009, Ms. Edwards provided Plaintiff with written instructions on how to correct the May 5 deposit, which stated that "CSR's [Customer Service Representatives] will be over." (Pl. Dep. at 162-165, 173, Ex. 27; Edwards Decl.¶ 11, Ex. C.)

Plaintiff's Response:  Admits.

22.

At the end of the day on May 13, 2009 after making the correction as Ms.

Edwards instructed, Plaintiff showed herself as being "in balance" on the computer system. (Pl. Dep. at 168-173, Ex. 29; Edwards Decl. ¶¶ 11, 12, Exs. D, E.)

Plaintiff's Response: Admits. Plaintiff went to Edwards and told her that here was a problem and she was told not to worry about it. (Plaintiff's Decl. at ¶ 14).

23.

On May 27, 2009, Plaintiff counted her cash and found that she had $3,228.36. However, she entered into the computer system and on her bank deposit slip that she was depositing $3,328.36 to the bank. (Pl. Dep. at 173-174; Edwards Decl. ¶ 14, Exs. F, G.)

Plaintiff's Response: Admits.

24.

On May 27, 2009, Plaintiff closed out of the computer system at the end of the day reporting that she was "in balance" when, in fact she was "out of balance." (Pl. Dep. at 173-174; Edwards Decl. ¶ 14, Exs. F, G.)

Plaintiff's Response: Denies. Plaintiff believed that she was in balance at the time she completed her work at the end of the day, and did not find out she was out of balance until she was notified by Mobley. (Plaintiff's Decl. at ¶ 14).
.

25.

On June 5, 2009, Ms. Mobley reported to Ms. Harrison that it appeared that Plaintiff had force balanced on three separate occasions in May 2009 – each time

reporting that she was in balance when she was not. (Mobley Decl. ¶ 19; Harrison Decl. ¶ 23; Ellis Dep. at 142; Mobley Dep. at 242-245.)

Plaintiff's Response:   Admits.

26.

Ms. Harrison and Ms. Ellis decided to contact Georgia Power's Internal Auditing department to request that they investigate Plaintiff's apparent force balancing. (Harrison Dep. Vol. II at 11-16; Harrison Decl. ¶ 28; Ellis Dep. at 142, 150, 157-158; Ellis Decl. ¶ 23; Palmore Decl. ¶ 4.)

Plaintiff's Response:   Admits.

27.

In early June 2009, two auditors from Georgia Power's Internal Auditing department reviewed Plaintiff's cashier tapes, cash reports, bank deposits and bank deposit reports for May 5, 13 and 27, and interviewed Plaintiff and Jan Edwards. (Palmore Decl. ¶¶ 4-6; Pl. Dep. at 182-183; Edwards Decl. ¶ 16.)

Plaintiff's Response:   Admits.

28.

The internal auditors told Ms. Ellis that they thought Plaintiff had engaged in "classic force balancing." (Palmore Decl. ¶ 7; Ellis Dep. at 160; Ellis Decl. ¶ 24.)

Plaintiff's Response:   Admits.

29.

Based on the determination by Internal Auditing that Plaintiff had force balanced and her understanding that force balancing is a terminable offense, Ms.

Harrison decided to terminate Plaintiff's employment. (Harrison Decl. ¶ 30; Ellis Decl. ¶ 26.)

Plaintiff's Response: Admits.

30.

Ms. Harrison never indicated to Plaintiff that she thought Plaintiff was disabled, and Ms. Harrison never thought that Plaintiff had a mental or physical impairment or that she was substantially limited in any major life activity. (Harrison Decl. ¶ 32; Pl. Dep. at 113.)

Plaintiff's Response: Plaintiff's admits that she never stated this.

31.

In October 2009, Ms. Harrison terminated Cathie Smith Cole after she was found to have force balanced. (Harrison Decl. ¶ 33; Harrison Dep. Vol. I at 35-36; Palmore Decl. ¶ 10; Palmore Decl. ¶ 10; Mobley Dep. at 31-32; Edwards Decl. ¶ 17.)

Plaintiff's Response: Admits, Cole was terminated but denies that she forced balanced. (Cole Decl. at ¶ 22).

32.

Ms. Harrison believes that force balancing is a terminable offense and that it is Georgia Power's consistent practice to terminate any employee who engages in force balancing. (Harrison Decl. ¶ 27; Harrison Dep. Vol. I at 147-148, 151-152, 161; Harrison Dep. Vol. II at 10-12.)

Plaintiff's Response: Denies. Harrison is a manager with many years of

experience and stated that she was aware of Defendant's disciplinary policies and referred to them at the time she was considering disciplining Plaintiff. Forced balancing is not list as a terminable offense upon the first time. Harrison admitted that she had failed to follow the Defendant's disciplinary policies and had failed to give Plaintiff a DML which is given to all employees who have allegedly committed a terminable offense.   Plaintiff could not identify any document or individual that old her that she was required to terminate Plaintiff. (Harrison Dep. 2 at pp. 11, 147, 56-58).

33.

Ms. Harrison is not aware of anyone at Georgia Power who has been found to have force balanced who was not terminated. (Harrison Decl. ¶ 27; Harrison Dep. Vol. I at 143-145.)

Response:  Denies.  Harrison could not identify any individuals who were terminated other than Plaintiff. (Harrison Dep. at pp. 143).

34.

Plaintiff never complained of differential treatment based on her race, any perceived disability, or any other protected classification when she filed a concern with the Workplace Ethics department in June 2008.  (Molock Decl. ¶¶ 3-6; Pl. Dep. at 68-79, Exs. 10, 11.)

Plaintiff's Response:  Admits.  Plaintiff was not sent home on unpaid administrative leave until September 2008.  (Plaintiff's Dep. at pp. 113,116, 152)

35.

During Plaintiff's November 9, 2011 deposition, Plaintiff admitted that she intentionally lied and made a material omission on her application for employment to Georgia Power. (Pl. Dep. at 18-21, Ex. 1 (admitting that she lied about attending Macon Junior College on her application because she wanted a job), 139-142 (admitting that she lied about the length of time she attended Wesleyan College because she was "very young" (she was 30 years old)), 146-148 (admitting that she purposefully omitted a previous employer from her application because she had been terminated by that employer)).

Plaintiff's Response: Admits.

36.

If Ms. Harrison had known about Plaintiff's lies and omissions on her application during Plaintiff's employment, Ms. Harrison would have terminated Plaintiff's employment. (Harrison Decl. ¶ 38.)

Plaintiff's Response: Admits.

37.

During Plaintiff's November 9, 2011 deposition, Plaintiff testified that she does not have a claim for race discrimination. (Pl. Dep. at 216 ("Q: I just want to hear, do you think you were fired because you were African-American? A: No.); Pl. Dep. at 235-236 ("Q: do you think [Georgia Power] sent you for the fitness for duty exam because you're African-American? A: No, no."); Pl. Dep. at 251 ("Q: And I think you've told me that you don't believe you have a claim for race discrimination? A: Correct.").

Plaintiff's Response:  Admits.

38.

Other than the fitness-for-duty evaluations by Dr. Tillitski and Plaintiff's own personal psychologist, Plaintiff has not seen a doctor, psychologist, or other healthcare professional for any alleged emotional distress and has not sought counseling or treatment as a result of any act or omission of Georgia Power.  (Pl. Dep. at 251; Pl. Aff. ¶¶ 2-7).

Plaintiff's Response:  Admits.

Respectfully submitted this 12th day of March, 2012

/s/Jamie G. Miller
Jamie G. Miller
Georgia State Bar No. 507159
*Counsel for Plaintiff*

Law Office of Jamie G. Miller
3399 Peachtree Road, NE
Suite 400
Atlanta, GA 30326
Phone: (404) 601-2861